## RICE *vs.* THE GEORGIA NATIONAL BANK.

[BLECKLEY, Justice, having been of counsel, did not preside.  Judge Hillyer, of the Atlanta Circuit, was designated by the governor to preside in his place.]

1. Where the record contains no judgment on demurrer, this court will assume that there was no such judgment.
2. The declaration in this case is not so defective as that a verdict thereon would be necessarily illegal.  Its defects are amendable and would be cured by verdict.
3. Where a bank held demands, secured by collaterals, against its customer for loans and advances, part of which demands had been liquidated by note, and there had been a course of dealing between the parties, embracing these advances, and also deposits made with the bank from time to time by the customer, and where there was evidence tending to show an accounting between the parties, and an accord and settlement, in which the collateral securities were divided between them, the amount of collaterals falling to the bank credited on the gross sum of its demands, a new note taken for the balance, and the old notes all canceled and surrendered and entered paid on the discount book of the bank:

*Held, a.* That this transaction on its face would operate as a payment and cancelation of the demands held by the bank against the customer except as to said balance for which the new note was taken.

*b.* That if the bank allege the contrary the burden would be on the bank to prove it.

*c.* That if, in such case, the court so charge the jury as in terms or by reasonable implication to impose the burden of proof touching such point on the customer, a new trial should be granted.

*d.* Even if the burden of proof were on the debtor, a charge which submits to the jury, whether "the circumstances as demonstrated to them by the evidence is of such a nature as to raise the implication —the necessary implication that it was taken in payment," puts the case too strongly, and demands more than the law would require to overcome such burden of proof—mere preponderance of evidence would be sufficient.

Practice in the Supreme Court. Pleadings. Bank. Contracts. *Onus probandi.* Charge of Court. Before Judge CLARK. City Court of Atlanta. June Term, 1878.

Reported in the opinion.

JOHN L. HOPKINS, for plaintiff in error.

N. J. HAMMOND, by brief, for defendant.

HILLYER, Judge.

The declaration made substantially the following case: That the defendant, Rice, was indebted to the plaintiff, the Georgia National Bank, in the sum of $11,429.25, besides interest, for certain advances which before that time the bank had made to Rice, and that those advances were secured by certain collaterals, consisting of executive warrants and certified accounts against the treasury of the state for public printing, amounting to the sum of $17,295 ; that the bank entrusted those collaterals to Rice for the purpose of collection ; that he was to obtain from the legislature an appropriation, and was to apply the proceeds, when collected, so far as necessary, to the payment of the debt owing by him to the bank; and that the legislature, instead of

appropriating the whole amount, $17,295, as claimed, appropriated only the sum of $12,772.15; that Rice, instead of paying over the amount of his debt to the bank in full, had paid in part only, leaving a large balance, amounting to five. or six thousand dollars, with interest, still due the bank, and refused to pay or account for the same on demand.

On the trial, it appeared in evidence that the defendant, Rice, did originally owe the bank the amount claimed, mainly for advances made from time to time by the bank to S. W. Grubb, in his capacity of agent for Rice as proprietor of the New Era newspaper in doing the public printing, amounting to $12,000.00, or near that sum, and that as collateral security for this indebtedness, the·bank held the above named claims against the state for public printing. A minor portion of these claims were in the form of certified accounts, the remainder in executive warrants, issued by Governor Bullock, but which treasurer Angier had refused to pay; that some time prior to the application to the legislature for the act of appropriation, there had been an accounting between Grubb, as agent, and Jones, cashier of the bank; that at the time of this accounting a part—much the greater part—of Rice's debt to the bank existed in the form of promissory notes, signed by Grubb as agent; and that in this accounting, these notes were all delivered up by the bank to Grubb as agent for Rice, and canceled, and marked paid on the discount books of the bank.  That the collaterals were all divided out between the parties, and that deducting the amount of collaterals falling to the bank in this division, with other items not necessary to be specified, Grubb, as agent, gave a new note for the balance.  The defendant contended that at the time the legislature met, when it became necessary to apply for the appropriation, the mattter of demands formally held by the Bank against him had all been settled in the above named accounting, and that the claims against the state for printing which fell to him in the division of collaterals passed to and were held by him in his own right, with no lien thereon in favor of

the bank, or obligation on his part to account for any part of the proceeds, and that the remainder of the collaterals held by the bank in like manner belonged to it in its own right; that some time after the above named division occured, those collaterals belonging to the bank had been handed back to him for convenience merely, and that they might be consolidated and passed upon by the legislature all in one appropriation, and that he was to make collection of the whole, and then to divide the proceeds between the two, and that when collection was made, not of the full amount claimed, viz: $17,295.00, but of the whole lesser amount actually appropriated, viz: $12,722,15, he had paid over to the bank its full *pro rata* share of the same.

There was no conflict in the evidence as to the original amount of the bank's demand against Rice, or as to the fact that the accounting had taken place; that the division of collaterals had been made, and that so much of the claim as had existed in the form of Grubb's notes as agent, had been delivered up, and canceled. and entered paid on the books of the bank, and that upon deducting the amount of collaterals falling to the bank in the division, with other items above named, from the gross amount of the bank's claim against Rice, Grubb, as Rice's agent, had given a new note for the balance.

But there was a conflict in the evidence as to whether this transaction was intended to operate as a payment and cancellation *pro tanto* of the bank's claim against Rice, or whether the whole demand was left open.

The testimony in favor of the defendant appears to preponderate, both in distinctness of recollection and statement, the number of witnesses and circumstances, in favor of the theory of payment and satisfaction. But the evidence of Jones, the cashier, was the other way. There was a verdict in favor of the plaintiff, and the defendant moved for a new trial on various grounds, which motion was overruled.

1. One of the grounds was that the court erred in overruling a demurrer by the defendant to the plaintiff's dec-

laration; and the bill of exceptions recites that there was such demurrer, and that the court overruled it, but on looking to the transcript of the record, we find in it no judgment on demurrer, and we are of the opinion that the judgment on demurrer is one of those things which must appear in the record. There are many occurrences of a trial which may be sufficiently authenticated by a recital in the bill of exceptions, but a judgment on demurrer is not one of them. If such judgment does not appear in the record, this court will assume that there was no judgment on demurrer, and no assignment of error can be based thereon.

2. It is insisted in the argument that the declaration was so far defective as that no legal verdict could, in any event, be rendered thereon, and that the same ground, that is, insufficiency of the declaration, was still in reach of the court, under the assignment of error contained in the bill of exceptions, that the verdict was illegal; but we think that whilst the declaration contains some unnecessary averments, and is more or less involved in its language, still, there is the substance, the frame-work of a legal cause of action set out in it as stated in the beginning of this opinion. If more of precision be desirable, it can be supplied by amendment, and any defect that is amendable would be cured by verdict.

3. 4. The case turned mainly, as it appears to us, on the question of whether when the accounting and alleged settlement took place between Grubb, as agent of Rice, and Jones, the cashier, and the division of collaterals occurred, and the cancellation of the notes took place as above stated, some months prior to the meeting of the legislature, this was *intended* to operate as a payment of so much of Rice's debt to the bank as was not embraced in the new note given; or whether it was merely a surrender by the bank of a part of the collaterals, with the relation of debtor and creditor between Rice and the bank, for the gross amount of his debt, remaining as before. The court, in charging the jury, seems to have gone on the idea that

under the state of facts set forth, the burden of proof was on the defendant. to show that it was a payment; but we think that as matter of law, the transaction, on its face, constituted a payment, and if the bank alleged the contrary, the burden was on the bank to prove it; and this being a point so vital in the case as would likely have a very material influence, and possibly a controlling influence in determining the result,we are constrained to grant a new trial. 2 Gr'l'f on Ev., sections 527, 520, 523 ; 2 Parsons on Bills and Notes, 154, 155, 156; 31 *Ga.*, 564, 581.

Some distinction was sought to be drawn, and commented on in the argument, between that portion of the collaterals falling to the bank under the division, which consisted of an executive warrant amounting to $8,350.42, and certain certified accounts for printing, for which it would seem an executive warrant had never been issued, amounting to $1,450.08 ; and the question was mooted as to whether even though one of these were accepted as payment, still the transaction was not to be treated as payment so far as concerned the other; or whether, even if the certified accounts were not accepted as payment, still the loss as to that amount should be made to fall upon the bank, and not on Rice, on the ground of negligence of the bank in not presenting or taking steps to collect them.   But as there is to be a new trial, we express no opinion as to these or other matters of fact, leaving the merits of the case to be passed on under such evidence as shall be adduced at another trial, under the charge of the court.

Judgment reversed.